UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERACER R. TAYLOR,

      Plaintiff,

v.

JOHN PRELESNIK,

      Defendant.

_____/

Case No. 09-cv-14214

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING REPORT AND RECOMMENDATION
WITH MODIFICATIONS** (docket no. 13) **AND DENYING
THE PETITION FOR HABEAS CORPUS** (docket no. 1)

Geracer R. Taylor is serving a term of life imprisonment without the possibility of parole after being convicted of first-degree murder and commission of a felony with a firearm in Wayne County Circuit Court. The Michigan Court of Appeals affirmed his conviction.[1] After exhausting his claims, he filed a habeas corpus petition with this Court pursuant to 28 U.S.C. § 2254(a). Taylor raises four assignments of error: denial of his right to confront accusers under the Sixth Amendment, insufficient evidence to support the verdict, prosecutorial misconduct, and racially-biased jury composition. The Court referred the matter to a magistrate judge. After considering Taylor's petition and the warden's reply, the magistrate judge issued a Report and Recommendation ("Report") which suggests denying the petition and issuing a certificate of appealability with respect to the

_____

[1] The Michigan Court of Appeals was the last court to address the merits of Taylor's case. The Michigan Supreme Court initially granted leave to appeal, but vacated the order and denied Taylor's application after hearing oral arguments.

1

Confrontation Clause issue.  Taylor did not file timely objections to the Report.[2]  The Court will reject the report's recommendation on a certificate of appealability, but adopt its findings in all other respects.

## STANDARD OF REVIEW

Civil Rule 72(b) governs review of the Report.  De novo review of the magistrate judge's findings is required if the parties timely serve and file "specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2)-(3).  Nonetheless, the district judge may review any other portion of a magistrate judge's report and recommendations of his own initiative, since the district judge always retains jurisdiction over the case after referral. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Because the petition presents a difficult application of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") to an emerging area of constitutional jurisprudence, this Court will review the magistrate judge's findings de novo.

Under AEDPA, a court may grant a writ of habeas corpus only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).  A contrary holding either applies a rule that "contradicts the governing law," that is the Supreme Court's "decisions as of the time of the relevant state-court decision"

---

[2]  Just over a month after the filing of the Report, Taylor sent a letter to the Court asking for an extension of time to file objections.  On August 10, 2011, the Court issued an order extending Taylor's time to file objections by two weeks.  Today, almost two months after the Court's order granting an extension, Taylor has still not filed objections with the Court.

2

or reaches a different result from the Supreme Court on a "materially indistinguishable" set of facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). For an application to be unreasonable, it must be "objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). A state court's factual findings are presumed correct.[3] 28 U.S.C. § 2254(e)(1).

## DISCUSSION

I.    Confrontation Clause Claim

Taylor's first contention in his habeas petition is that the admission of the murder victim's statements to police officers at the crime scene violated his Sixth Amendment right to confront adverse witnesses. The Michigan Court of Appeals rejected the claim, holding that the statements were nontestimonial and thus not subject to the Sixth Amendment's confrontation requirement. Alternatively, it held that the statements were admissible under a dying declaration exception to the Confrontation Clause even if testimonial. The magistrate judge found both conclusions to be reasonable, and the Court agrees.

A.   Nontestimonial Statements

A witness's pre-trial, testimonial statements are subject to the strictures of the Confrontation Clause when the witness (1) is unavailable and (2) was previously subject to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 50-51, 59, 68 (2004). Nontestimonial statements are exempt from these requirements. *Whorton v. Bockting*, 549 U.S. 406, 420 (2007). In *Davis v. Washington*, 547 U.S. 813 (2006), the Court found that statements made with the "primary purpose" of enabling police to meet an "ongoing

---

[3] The Court relies upon the magistrate judge's recital of facts. *See* Report 4–10.

emergency" are not testimonial. *Davis*, 547 U.S. at 826, 830. *Davis* identified four characteristics of a statement that meets the emergency exception: the witness describes contemporaneous events rather than events that occurred hours earlier, an objective emergency exists, the questions are necessary to resolve the emergency, and the interview is of an informal nature. *See id.* at 826-30. In a recent unpublished habeas decision, the Sixth Circuit found that reasonable jurists could conclude a wounded victim's identification of her attacker by name to a police officer near the crime scene was nontestimonial. *See Colon v. Taskey*, 414 F. App'x 735, 738 (6th Cir. 2010). Although *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), was not governing law when the Michigan Court of Appeals decided Taylor's case, that case suggests a court applying *Davis* might reasonably consider the victim's medical condition and the police's knowledge of the attacker's motive and location in determining whether the emergency exception applies. *See Bryant* at 1159 ("The medical condition of the victim is important to the primary purpose inquiry [of *Crawford*] to the extent that it sheds light on the ability of the victim to have any purpose at all in responding to police questions and on the likelihood that any purpose formed would necessarily be a testimonial one.").

The Michigan Court of Appeals reasonably concluded Lasater's identification was nontestimonial. The court found that the police officers "arrive[d] at the crime scene immediately after a shooting," that many people were in the house, and that the victim was "clearly dying of multiple gunshot wounds." *People v. Taylor*, 275 Mich. App. 177, 182 (2007). The facts of this case are less favorable to Taylor than those the Sixth Circuit relied upon in *Colon* to deny the habeas petition. Moreover, questions about the identity of a

4

murder suspect who has yet to be apprehended are necessary to assess whether the gunman might pose a continuing threat to the victim or the public when the suspect's identity, motive, and location are unknown.  *See Bryant*, 131 S. Ct. at 1165-66.  Finally, as opposed to a station-house interrogation, the questioning in this case was informal.[4]  The Court adopts the recommendation of the magistrate judge on this issue.

    B.  <u>Dying Declaration Exception</u>

Even assuming that Lasater's identification was testimonial, the Michigan Court of Appeals held it was admissible as a dying declaration.  Taylor objects that no dying declaration exception to *Crawford* existed.  Despite *Crawford*'s sweeping language, the Supreme Court declined to decide "whether the Sixth Amendment incorporates an exception for testimonial dying declarations [to the cross-examination requirement]." *Crawford*, 541 U.S. at 56; *see also Bryant*, 131 S. Ct. at 1151 n.1.  It acknowledged that the Sixth Amendment is "most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding," and if a dying declaration "exception must be accepted on historical grounds, it is *sui generis*." *Crawford*, 541 U.S. at 56 n.6.

Dying declarations are a well-established exception to the general rule against unconfronted testimony.[5]  Some courts recognize a dying declaration exception to

---

    [4]  Taylor directs the Court's attention to a second interview with the victim en route to the hospital that Taylor claims was investigative in nature.  The argument is unavailing because later testimonial statements do not render earlier nontestimonial statements inadmissible.  *See Davis*, 547 U.S. at 828-29.

    [5]  *See Mattox v. United States*, 156 U.S. 237, 243-44 (1895) ("[T]here could be nothing more directly contrary to the letter of the [Confrontation Clause] than the admission of dying declarations. . . . [Y]et from time immemorial they have been treated

5

*Crawford*.  *See Duncan v. Bobby*, No. 1:07 CV 839, 2008 WL 111229, at *8 (N.D. Ohio Jan. 8, 2008); *People v. Monterroso*, 101 P.3d 956, 972 (Cal. 2004).  Many more acknowledge the question is unresolved.  *See, e.g.*, *Bryant*, 131 S. Ct. at 1151 n.1; *Martin v. Fanies*, 365 F. App'x 736, 739 (5th Cir. 2010); *United States v. Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006); *United States v. Hendricks*, 395 F.3d 173, 179 n.6 (3d Cir. 2005); *Nesbit v. St. Amand*,  No. 09–10615–DPW, 2011 WL 1232376, at *12-13 (D. Mass. Mar. 30, 2011); *Leighton v. Scribner,* No. CV 08-4552, 2009 WL 6441470, at *17 (C.D. Cal. Dec. 04, 2009); *Nesmith v. Bradt,* No. 08-Civ-6546, 2009 WL 3189346, at * 5 (S.D.N.Y. Oct. 05, 2009); *United States v. Mayhew*, 380 F. Supp. 2d 961, 964-65 (S.D. Ohio 2005).  A state court cannot act unreasonably under AEDPA if the Supreme Court has not decided a question.  *See Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam) (reversing court of appeals' grant of habeas relief because Supreme Court precedent provided "no clear answer to the question presented").  Taylor only identifies a single case holding that *Crawford* foreclosed any dying declaration exception.[6]  *See United States v. Jordan*, No. 04-CR-229-B, 2005 WL 513501, at *3 (D. Colo. Mar. 3, 2005).  That case is unpersuasive for a number of reasons:

> First, the district court in *Jordan* was ruling on a motion *in limine* to exclude out-of-court statements and consequently was not employing the deferential review required by AEDPA.  Second, the opinion concentrates primarily on the policy implications of the dying declaration exception.  Such a concern, while relevant to the question whether the dying declaration *should* be an exception, has no bearing

---

as competent testimony, and no one would have the hardihood at this day to question their admissibility.").

   [6] Taylor also cites *United States v. Mayhew* for this proposition.  Although *Mayhew* found no dying declaration exception, it nevertheless recognized that the Supreme Court had not ruled on the question.  *Mayhew*, 380 F. Supp. 2d at 964-65.

on whether the dying declaration *was* an exception under *Crawford* at the point [when the state court rendered its decision] . . . . Finally, the *Jordan* court's reasoning conflicts with *Crawford* itself.  The *Jordan* court determined that the dying declaration exception could not exist under *Crawford* because such an exception "was not existence at the time the Framers designed the Bill of Rights."  The Supreme Court however suggested in *Crawford,* and found in *Giles* [*v. California*, 554 U.S. 353 (2008)], that the dying declaration was one of only two common law exceptions to the confrontation requirements at the founding.

*Nesbitt*, 2011 WL 1232376, at *13 n.9 (internal citations omitted).  Since *Crawford* did not

clearly foreclose a dying declaration exception, AEDPA provides Taylor no relief on this

point.  *See Martin*, 365 F. App'x at 739; *Nesbitt*, 2011 WL 1232376, at *13; *Gilmore v.

Lafler*, No. 2:07-cv-14010, 2010 WL 2560034, at *11 (E.D. Mich. June 15, 2010); *Jones v.

Davis*, No. 2:05-cv-70897, 2006 WL 1452505, at *6 n.3 (E.D. Mich. May 23, 2006).

In the alternative, Taylor contends that the identification was not within the dying

declaration exception.  The argument is without force, because the Supreme Court did not

resolve whether *Crawford* admits a dying declaration exception, much less address its

scope.  *Giles*, which hints that any exception only extends insofar as it existed at the time

of the founding, *see* 554 U.S. at 358, was only decided after the Michigan Court of Appeals

ruled.  In any event, the identification likely fits within the founding-era exceptions, because

a court could reasonably find that Lasater believed his death was imminent and was

making statements on what he believed to be the cause of his death.  Report 23-27, ECF

No. 13; *see also* Mich. R. Evid. 804(b)(2) ("[S]tatement made by a declarant while believing

that the declarant's death was imminent, concerning the cause or circumstances of what

the declarant believed to be impending death" are excepted from the hearsay rule).

II.    <u>Sufficiency of the Evidence</u>

Taylor also disputes that there was a constitutionally sufficient amount of evidence to establish that he shot Lasater or that the shooting was premeditated.   The Court disagrees.

Habeas relief is unwarranted if the state court could reasonably conclude that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   Both circumstantial and direct evidence carry the same weight in this review.   *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).   To obtain a first-degree murder conviction in Michigan, the prosecution must prove that the killing was "willful, deliberate, and premeditated."   Mich. Comp. Laws § 750.316(a); *People v. Dykhouse*, 418 Mich. 488, 495 (1984).   The requisite mens rea may be inferred from the circumstances, *People v. Oritz-Kehoe*, 237 Mich. App. 508, 520 (1999), including the relationship of the parties, the circumstances of the killing, and the defendant's conduct before and after the killing.   *People v. Brown*, 137 Mich. App. 396, 407 (1984).

As the Report recounts, Lasater's identification and multiple pieces of circumstantial evidence support that Taylor argued with Lasater, went home, armed himself, returned, and fatally shot Lasater four times.   Report 29-30; *see also Taylor*, 275 Mich. App. at 178-80. Based upon the argument, Taylor's fetching of a firearm and return, and the multiple shots fired, the Michigan Court of Appeals could reasonably find the evidence constitutionally sufficient to infer that Taylor acted willfully, deliberately, and with premeditation.   Taylor

8

presents no convincing argument that the evidence was insufficient, and the Court accordingly denies relief on this claim.

III.   Prosecutorial Misconduct[7]

Taylor also asserts a prosecutorial misconduct claim, arguing that the prosecutor previewed evidence in his opening statement later ruled inadmissible, introduced evidence about a shotgun later ruled out as the murder weapon, and elicited testimony about the victim's identification.  The Michigan Court of Appeals noted Taylor did not raise the issue at trial and rejected the claims in an abbreviated review.  The magistrate judge also concluded the assignment of error was meritless, and the Court agrees.

Habeas relief is warranted only if the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416, U.S. 637, 643 (1974)).  The prosecutor's conduct "must be both improper and flagrant."  *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006).  In this case, no relief is warranted.  The Court first agrees with the Report's analysis that the prosecutor's opening statement was likely made in good faith and was harmless, since the jury instructions were sufficient to cure any prejudice.  Second, the shotgun evidence was offered in good faith, being "relevant to establish the prosecutor's theory that defendant's mother had two shotguns, one of which was never recovered."  *Taylor*, 275 Mich. App. at 186.  Finally, the prosecutor's effort to

---

[7] As the magistrate judge recognized, this claim and the fair cross-section claim are likely barred by procedural default.  The Court addresses the merits here to demonstrate Taylor was not prejudiced by the default, which he must show to obtain review under *Byrd v. Collins*, 209 F.3d 486, 520 (6th Cir. 2000).

admit the dying declaration was not misconduct, because the evidence was properly admitted.

IV.     Racial Composition of the Jury

Taylor additionally argues that he was denied his Sixth Amendment right to a jury drawn from a fair cross-section of the community.  Since Taylor did not raise this challenge during voir dire, the Michigan Court of Appeals reviewed Taylor's claim for plain error and rejected it.  A review by any standard demonstrates that the claim must fail.

> To establish a Sixth Amendment violation, the criminal defendant
>
> must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Berghuis v. Smith*, 130 S. Ct. 1382, 1395 (2010) (emphasizing that the criminal defendant bears the burden of proof for each element).  Although Taylor asserts there were "virtually no potential black jurors" in the jury pool, he does not "indicate the racial makeup of defendant's venire, or more importantly, [produce evidence] that any underrepresentation was because of systematic exclusion." *Taylor*, 275 Mich. App. at 184 & n.1.  Taylor cannot establish a prima facie case for relief without such evidence.  *See e.g.*, *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001) (holding defendant did not establish violation without introducing evidence of the community's demographics or of other venires' compositions); *United States v. Horne*, 4 F.3d 579, 588 (8th Cir. 1993) ("Evidence of a discrepancy on a single venire panel cannot

demonstrate systematic exclusion."). The Court will adopt the magistrate judge's finding that this assignment of error does not entitle Taylor to relief.

V.    <u>Certificate of Appealability</u>

The Report recommended issuing a certificate of appealability with respect to the Confrontation Clause claim. A certificate of appealability may issue "only if the applicant has made a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists" could debate whether the district court correctly decided the habeas petition. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Although reasonable jurists may disagree on whether Lasater's identification was testimonial and the extent to which dying declarations are permitted under the Confrontation Clause, the result under AEDPA's highly deferential standard is not open to debate. No court employing that standard has found that dying declarations are testimonial under *Crawford*. Therefore, no certificate of appealability will issue in this case. For the reasons stated in the Report, a certificate of appealability for Taylor's other claims is denied.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the Report (docket no. 13) is **REJECTED IN PART** as to the certificate of appealability, and **ADOPTED IN PART** as to the rest of the Report's findings. Accordingly, the petition for habeas corpus (docket no. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. Taylor may proceed in forma pauperis when seeking a certificate of appealability. *See* Fed. R. App. P. 24(a)(3).

11

**SO ORDERED**.

                                      s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: October 5, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 5, 2011, by electronic and/or ordinary mail.

                                        s/Carol Cohron
                                        CAROL COHRN
                                        Case Manager